UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| STEVEN J. STORTI,<br>Plaintiff, | : | |
| v. | : | CA 05-539 M |
| MICHAEL J. ASTRUE,[1]<br>COMMISSIONER,<br>SOCIAL SECURITY ADMINISTRATION,<br>Defendant. | : | |

**MEMORANDUM AND ORDER**

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Disability Insurance Benefits ("DIB"), under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act"). Plaintiff Steven J. Storti ("Plaintiff") has filed a motion for an order reversing the decision of the Commissioner and remanding the claim for DIB back to the Commissioner. See Plaintiff's Motion for Order Reversing the Decision of the Commissioner and Remanding for Further Proceedings (Document ("Doc.") #14) ("Motion for Reversal and Remand"). Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner. See Defendant's Motion for an Order Affirming the Decision of the

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Commissioner Michael J. Astrue has been substituted for Jo Anne B. Barnhart as Defendant in this action. See Fed. R. Civ. P. 25(d)(1) (2007) ("When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party ...."); see also 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Commissioner (Doc. #16) ("Motion to Affirm").

With the parties' consent, this case has been referred to a magistrate judge for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. For the reasons set forth herein, I find that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and free of legal error. Accordingly, based on the following analysis, I order that Defendant's Motion to Affirm be granted and that Plaintiff's Motion for Reversal and Remand be denied.

**Facts and Travel**

Plaintiff was born in 1952 and was forty-three years of age at the time his insured status expired. (Record ("R.") at 120, 527, 535) He completed the twelfth grade and received special training in the jewelry industry, (R. at 149, 527), and has past relevant work experience as a toolmaker and polisher, (R. at 144, 527).

Between 1980 and 1990 Plaintiff was employed as a toolmaker. (R. at 527) On May 9, 1990, he dropped a heavy weight on his right foot, injuring his foot and back. (R. at 32, 314) Thereafter, he received Workers' Compensation benefits until approximately 2000 when the claim was settled. (R. at 681)

Plaintiff filed an application for DIB on May 31, 2000 (protective filing date), alleging disability since May 9, 1990, due to a back injury, depression, and anxiety. (R. at 143, 152, 527) The application was denied initially and on reconsideration, (R. at 71, 81), and a request for a hearing before an administrative law judge ("ALJ") was timely filed, (R. at 85). A hearing was conducted by ALJ V. Paul McGinn ("ALJ McGinn") on December 5, 2001, at which Plaintiff, represented by counsel, appeared and testified. (R. at 22, 32-54) An impartial vocational expert ("VE"), Estelle Hutchinson, and a witness, Rose

Marie Principe, also testified. (R. at 54-64)

ALJ McGinn issued a decision on January 11, 2002, in which he found that Plaintiff was not disabled and, therefore, not entitled to a period of DIB. (R. at 16-21) The Appeals Council denied Plaintiff's request for review on May 31, 2002, (R. at 8-9), thereby rendering ALJ McGinn's decision the final decision of the Commissioner, (R. at 8).

Plaintiff filed an action in this Court, seeking judicial review of the Commissioner's decision. See Steven Storti v. Jo Anne B. Barnhart, C.A. No. 02-298LO. On June 25, 2003, Magistrate Judge Robert W. Lovegreen issued a Memorandum and Order, (R. at 538-51), remanding the matter to the Commissioner for further hearing, (R. at 550-51). Judge Lovegreen directed the Commissioner to state the basis for his rejection of the November 26, 2001, opinion of E. Jonathan Wolston, M.D. ("Dr. Wolston"), that Plaintiff "'has been totally psychiatrically disabled from a medical point of view since before 1995.'" (R. at 549)(quoting (R. at 465)).

A subsequent administrative hearing was conducted by ALJ Hugh S. Atkins ("ALJ Atkins") on November 25, 2003. (R. at 670) Plaintiff, represented by counsel, testified, (R. at 678-87, 693-95, 698-99), as did VE Joseph Testa, (R. at 692, 693-700, 702-03), and medical expert ("ME") John Ruggiano, M.D., (R. at 688-92, 700-02). On April 13, 2004, ALJ Atkins issued a decision in which he found that the opinion of Dr. Wolston was entitled to little probative weight, (R. at 533), and that Plaintiff was not disabled at any time through the date of the decision, (R. at 536). The Appeals Council denied Plaintiff's request for review, (R. at 517-19), thereby rendering ALJ Atkins' decision the final decision of the Commissioner, (R. at 517).

On December 29, 2005, Plaintiff filed a Complaint (Doc. #1) in this Court, seeking judicial review of the decision by ALJ

Atkins. The Commissioner answered the Complaint on April 27, 2006. See Answer (Doc. #5). The matter was referred to this Magistrate Judge on May 1, 2006, by an Order of Reference (Doc. #6) entered on that date. See Docket. On January 11, 2007, Plaintiff's Motion for Reversal and Remand was filed. Defendant's Motion to Affirm was filed on February 9, 2007.

**Issue**

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is legally correct.

**Standard of Review**

The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[2] are conclusive. Id. (citing 42 U.S.C. § 405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1999)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support h[is] conclusion.")). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31

[2] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Suranie v. Sullivan, 787 F.Supp. 287, 289 (D.R.I. 1992); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *3 (S.S.A.) (quoting Richardson v. Perales and stating that "[t]he term [substantial evidence] is intended to have this same meaning in 20 CFR 404.1527(d)(2) ....").

(citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

**Law**

To qualify for DIB, a claimant must meet certain insured status requirements,[3] be younger than sixty-five years of age, file an application for benefits, and be under a disability as defined by the Act. See 42 U.S.C. § 423(a). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A). A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[4] 20 C.F.R. § 404.1521(a) (2007). A

---

[3] The ALJ found that Plaintiff's insured status expired on December 31, 1995. (Record ("R.") at 527, 536) Therefore, Plaintiff was required to prove that he was under a disability on or before December 31, 1995, to be entitled to DIB under Title II of the Act. (R. at 527)

[4] Section 404.1521 describes "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b) (2007). Examples of these include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;

claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986).

The Social Security regulations prescribe a five-step inquiry for use in determining whether a claimant is disabled. See 20 C.F.R. § 404.1520(a) (2007); see also Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether he is able to perform his past relevant work; and (5) whether he remains capable of performing any work within the economy. See 20 C.F.R. § 404.1520(b)-(g). The evaluation may be terminated at any step. See Seavey, 276 F.3d at 4. "The applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

**ALJ's Decision**

Following the familiar sequential analysis, ALJ Atkins made

---

(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

Id.

the following findings: that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability, (R. at 528, 536); that Plaintiff had severe lumbar degenerative disc disease, (id.), but that Plaintiff's physical impairment did not meet or equal any listed impairment, (id.); that Plaintiff's mental impairment did not become significant until after his insured status had expired, (R. at 534 n.15); that Plaintiff was unable to perform his past relevant work as a toolmaker, (R. at 535, 536); that the severity of pain and symptoms and the degree of incapacity alleged by Plaintiff were exaggerated and not credible particularly as they related to the period prior to the lapse of his insured status, (R. at 534, 536); that Plaintiff had the residual functional capacity ("RFC") to perform the exertional and nonexertional requirements of work except for the inability to lift or carry greater than ten pounds or perform any prolonged standing or walking, but that he did not have any nonexertional limitations, (R. at 534-35, 536); that based on an exertional capacity for sedentary work and Plaintiff's age, education, and past work experience, the regulations directed a conclusion of not disabled, (R. at 535, 536); and, therefore, that Plaintiff was not under a disability, as defined by the Act, at any time through the date of the decision, (id.).

**Error Claimed**

Plaintiff alleges that the ALJ failed to properly weigh the opinion of the treating physician in accordance with the Commissioner's regulations and Social Security Rulings. see Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Order Reversing the Decision of the Commissioner ("Plaintiff's Mem.") at 20-21. In particular, Plaintiff challenges the ALJ's rejection of the retrospective opinion of Plaintiff's treating psychiatrist, Dr. Wolston, that Plaintiff

has been psychiatrically disabled since before 1995. See id. at 21-30. According to Plaintiff, the ALJ's explanation for the rejection ignores pertinent law and facts and does not provide substantial evidence to support the ALJ's unfavorable decision. See id. at 30.

## Discussion

### I. The Reasons Given by the ALJ for Rejecting the Retrospective Opinion of Plaintiff's Treating Psychiatrist Are Supported by Substantial Evidence and Are Free of Legal Error.

#### A. Dr. Wolston's Opinion

In May of 1999, almost three and a half years after the expiration of Plaintiff's insured status, he began treating with Dr. Wolston.[5] (R. at 43, 372, 527) Some thirty months thereafter, in a November 26, 2001, letter to Plaintiff's attorney, Dr. Wolston opined that "it seems reasonable to me to state that in all likelihood, Mr. Storti has been totally psychiatrically disabled from a medical point of view since before 1995." (R. at 465) Dr. Wolston indicated that he based this opinion on three facts: 1) Plaintiff had consulted a psychiatrist in December of 1990, six months after injuring his back, (R. at 464); 2) Plaintiff's friend, who eventually convinced him to seek help again in 1999, had been urging him as early as 1993 "to go see somebody [for psychiatric help]," (id.)(alteration in original); and 3) Plaintiff's own account of his hesitation in seeking help during the period 1990 to 1995 centered around persistent feelings of shame and guilt, (R. at 465).

#### B. ALJ's Rejection of Dr. Wolston's Opinion

The ALJ gave four reasons for affording little, if any,

[5] Plaintiff saw Dr. Wolston on a monthly basis, usually for a half hour of psychotherapy. (R. at 43)

probative weight to Dr. Wolston's retrospective opinion:

> First, Dr. Wolston did not treat the claimant prior to 1999 almost 4 years after his insured status expired and there is virtually no psychological and/or psychiatric records (aside from a one time psychiatric "bill") to base his disability opinion on except for the claimant's own statement of symptoms alone. Second, Dr. Wolston did not delineate the significance of the claimant's self-admitted alcohol abuse in finding him "disabled" prior to December 1995. Third, Dr. Wolston failed to specifically address the claimant's degree of limitation in the various functional areas prior to the lapse of insured status aside from the conclusionary statement that he was "totally psychiatrically disabled." Fourth, Dr. Wolston by using terms such as "reasonable" and "in all likelihood" seems to be speculating on the claimant's psychiatric condition prior to December 1995 which is clearly **not** considered "substantial evidence" of the claimant's disability at that time.

(R. at 533)(footnotes omitted).

Accordingly, the ALJ found that Plaintiff's depression, anxiety disorder, personality disorder, and history of alcohol addiction were not medically determinable "severe" impairments within the meaning of the Social Security regulations. (R. at 533-34)(citing 20 C.F.R. § 404.1521). In making this finding, the ALJ noted that he "accept[ed] the fact that the claimant currently has a significant mental disorder, but there is, basically, no medical evidence of this mental impairment prior to the lapse of insured status in December 1995." (R. at 534 n.15)

The ALJ specifically found the severity of symptoms and degree of incapacity alleged by Plaintiff to be exaggerated and not credible, "particularly as it pertains to the period prior to the expiration of insured status." (R. at 534) As support for this credibility finding, the ALJ cited four facts. First, he stated that Plaintiff's complaints were inconsistent with the reports of his own treating and medical sources. (Id.) Second, the ALJ observed that if Plaintiff had actually experienced the

intense symptoms he described at the hearing, Plaintiff would have sought some form of psychological and/or psychiatric help prior to December 1995. (Id.) Third, the ALJ noted that Plaintiff's treating and examining sources have consistently reported that he has remained capable of light duty work. (R. at 534) Fourth, the ALJ cited the fact that Plaintiff was actually seeking employment during the period he claims to have been disabled.[6] (Id.)

### C. Applicable Law

It is Plaintiff's burden to establish by credible evidence that his mental impairment was of disabling severity as of his date last insured. See Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982). "It is not sufficient for him to establish that his mental impairment had its roots prior to that date." Id. "[M]edical evidence generated after a claimant's insured status expires may be considered for what light (if any) it sheds on the question of whether claimant's impairment(s) reached disabling severity before claimant's insured status expired." Lord v. Apfel, 114 F.Supp.2d 3, 16 (D.N.H. 2000). However, "[r]etrospective diagnoses (medical opinions of claimants' impairments which relate back to the covered period) may be considered only to the extent that such opinions both substantiate a disability that existed during the eligible period and are corroborated by evidence contemporaneous with the eligible period." Marcotte v. Callahan, 992 F.Supp. 485, 491 (D.N.H. 1997); see also Lord, 114 F.Supp.2d at 15 n.17 (citing Marcotte).

### D. Analysis of ALJ's Reasons

#### 1. Length of Time and Lack of Records

[6] Plaintiff's alleged onset date was May 9, 1990, (R. at 673), and he testified that he was actively seeking employment in 1994, (R. at 39).

Plaintiff asserts that "the fact that Dr. Wolston did not treat the plaintiff until over three years since the plaintiff's date last insured expired is not a determinative factor nullifying his opinion that the plaintiff was significantly mentally impaired during the time he had insured status." Plaintiff's Mem. at 24. Plaintiff also cites Social Security Regulation ("SSR") 83-20 for the proposition that in "some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination ...." Id. (quoting SSR 83-20, 1983 WL 31249, at *3 (S.S.A.)) Plaintiff additionally argues that Dr. Wolston's opinion is supported by other medical and lay evidence in the administrative record, allegedly the testimony of the ME, the testimony of Rose Marie Principe ("Ms. Principe"), Plaintiff's girlfriend at time of the hearing before ALJ McGinn, and a letter from Plaintiff's mother. See id. at 25-26.

Addressing Plaintiff's first contention, while the span of time involved in a retrospective medical opinion may not by itself be grounds for rejection of that opinion, it is clearly a relevant factor in determining the weight to be given to the opinion. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 n.3 (1st Cir. 1987)(noting that doctor's ability to shed light on whether plaintiff was incapacitated as of last insured date "was seriously curtailed because he never examined the plaintiff until some four and one-half years later"). There is obviously a significant difference between a retrospective medical opinion which looks back in time a few months and one which looks back several years. See Peguero v. Massanari, No. 00 CIV. 0173(GEL), 2001 WL 1029048, at *1 n.2 (S.D.N.Y. Sept. 5, 2001)(noting "common-sense conclusion that a retrospective opinion, based largely on a single long-past visit and

retrojection from present conditions, is not entitled to the same weight as a treating physician's assessment of a patient's current medical condition"). Here Dr. Wolston opined that Plaintiff had been psychiatrically disabled "since before 1995." (R. at 465) Dr. Wolston saw Plaintiff for the first time on or about May 25, 1999, (R. at 372, 461), making the span of time involved in his retrospective opinion more than four years.[7] It was not error for the ALJ to note this fact and to take it into consideration in determining the weight to be given to Dr. Wolston's opinion. See Peguero v. Massanari, 2001 WL 1029048, at *1 ("The Administrative Law Judge ... was certainly justified in giving little weight to the opinion of a 'treating physician' who had not seen the applicant at all during the relevant period, and was offering retrospective opinions in 1993 and 1996 about the applicant's condition in 1988-90 based on a single visit in 1988, the records of which were unavailable to refresh recollection and provide supporting documentation.").

Moreover, in addition to noting the time span involved in the retrospective opinion, the ALJ pointed out that there were virtually no psychiatric and/or psychological records (other than a one time psychiatric bill[8]) on which Dr. Wolston could base his opinion except for Plaintiff's own statement of symptoms. (R. at 533) The lack of supporting contemporaneous clinical evidence is

---

[7] The period from December 31, 1995, to May 25, 1999, is not quite forty-one months. However, "more than four years" accurately describes the span of time involved in Dr. Wolston's retrospective opinion because he stated that Plaintiff had been psychiatrically disabled "since before 1995." (R. at 465)

[8] The record contains a billing statement from Psychiatric Associates, Ltd., reflecting that on December 7, 1990, Plaintiff was evaluated by Louis H. Hafken, M.D. (R. at 466) From the codes which appear on the statement, 305.00 and 300.02, it appears that Dr. Hafken diagnosed Plaintiff as suffering from alcohol abuse and generalized anxiety disorder. (Id.); see also Diagnostic and Statistical Manual of Mental Disorders (3rd Ed. 1980) ("DSM III").

a valid factor which an ALJ may appropriately consider in determining the weight to be given to a physician's retrospective opinion. See Marcotte v. Callahan, 992 F.Supp. at 492 (finding that ALJ appropriately discounted physician's retrospective opinion where, *inter alia*, there was no contemporaneous medical evidence pertaining to the severity of plaintiff's impairment during the period at issue).

Similarly, it was not error for the ALJ to note that Dr. Wolston's opinion was based almost entirely on Plaintiff's own statements regarding his condition prior to the expiration of his insured status. See Marcotte v. Callahan, 992 F.Supp. at 491-492 (affirming decision of Commissioner where ALJ discounted retrospective opinion of physician because, *inter alia*, it was based entirely on plaintiff's own report of his symptoms during period). Indeed, Dr. Wolston's letter of November 26, 2001, to Plaintiff's attorney begins with the statements: "Mr. Storti and I have reviewed his history prior to December 31, 1995, as you requested. The question of his past level of disability was addressed." (R. at 464) This strongly suggests that Plaintiff was aware that the purpose of reviewing his history with Dr. Wolston was to obtain evidence that Plaintiff was unable to work prior to the expiration of his insured status. Such circumstance could validly be considered by the ALJ in determining the weight to be given to Dr. Wolston's opinion. The ALJ found that Plaintiff's claims regarding the severity of his symptoms and the degree of incapacity he alleged were not credible, especially as those claims related to the period prior to the expiration of Plaintiff's insured status.[9] (R. at 536) Since Dr. Wolston

---

[9] The record provides ample basis on which to question Plaintiff's credibility. During an October 1999 impartial medical examination conducted by Leah Oseas Cullen, M.D., (R. at 434), for the Workers' Compensation Court, Plaintiff denied using drugs or alcohol "either now or in the past ...," (R. at 435). Yet, at the hearing

appeared to base his retrospective opinion almost completely on Plaintiff's statements concerning that period, it was entirely appropriate for the ALJ to note this fact and to discount Dr. Wolston's opinion accordingly.

To the extent that Plaintiff contends that the ALJ failed to follow SSR 83-20, the Court finds this argument unpersuasive. SSR 83-20 is inapplicable in the instant matter. SSR 83-20 applies when an ALJ has found that a claimant is disabled, but the record lacks evidence to establish the date of the onset of disability. See Lisi v. Apfel, 111 F.Supp.2d 103, 111 (D.R.I.

---

before ALJ McGinn, Plaintiff testified to almost a decade of alcohol abuse. He told ALJ McGinn that when he went to see Dr. Hafken in December of 1990 "I was drinking heavily," (R. at 36); that he did not continue to treat with Dr. Hafken because "I just continued into my routine, my way of life. I was self medicating myself with alcohol," (R. at 37); that in 1994 after trying to find a job without success he "went back to drinking a lot ...," (R. at 41); that "I was drinking, like I said, quite a bit and I finally decided to see someone and it took a few years to do that ...," (R. at 42-43); that in 1993 and 1994 his mother told him that he should get help "with the drinking ...," (R. at 44); that he was drinking a quart of vodka every other day, (R. at 44-45); that in 1994 he had no interests and "just lay around all day. I just usually drank," (R. at 46); and that this lack of interest continued to exist from 1995-1999, (id.). At the hearing before ALJ Atkins, Plaintiff made no mention of his alcohol abuse, a fact the ALJ specifically noted in his decision. (R. at 529)

Plaintiff also gave inconsistent reasons for not continuing to treat with Dr. Hafken in 1990. As noted above, when asked about this at the hearing before ALJ McGinn, Plaintiff answered: "I just continued into my routine, my way of life. I was self medicating myself with alcohol. I just got wrapped up in the Comp system and I just didn't follow up on it." (R. at 37) However, Plaintiff apparently told Dr. Wolston that he stopped treatment with Dr. Hafken because of "constant bickering [over [insurance] coverage] ...." (R. at 464)(first brackets in original). At the hearing before ALJ Atkins, Plaintiff indicated that he did not continue to see Dr. Hafken because "I just thought it would work itself out ...." (R. at 679) Plaintiff also testified that Dr. Hafken "never really gave me any confidence or advice or -- he was more concerned of who was going to pay the bill," (R. at 687), and that he had "discouraged," (id.), Plaintiff. Plaintiff also stated at the same hearing that a couple of frends had tried to persuade him "to see somebody back in the early 90's and I, I just found it taboo to me to go open up my feelings to someone." (R. at 685)

2000)(explaining that SSR 83-20 "provides that once a disability has been identified, a medical advisor may be necessary to assist an ALJ in determining the onset date of that disability when the onset date is relevant to a claimant's entitlement to benefits"); see also SSR 83-20, 1983 WL 31249, at *1 (S.S.A.)(stating purpose of regulation). Here, as was the case in Lisi, "the ALJ found that [P]laintiff was not under a disability; therefore, no analysis of an onset date was necessary." Lisi v. Apfel, 111 F.Supp.2d at 111; see also (R. at 536)("The claimant was not under a 'disability' ... at any time through the date of this decision.")(internal citation omitted). Thus, to the extent that Plaintiff contends the ALJ failed to follow SSR 83-20, such argument is rejected.

Even if the Court were to read SSR 83-20 as being applicable to the instant action, the Court finds that the ALJ's actions were consistent with the requirements of the regulation. SSR 83-20 clearly states that a retrospective medical opinion, or any reasonable inferences drawn, must be supported by a legitimate medical basis. See SSR 83-20, 1983 WL 31249, at 3 ("This judgment [about the onset of a disabling impairment] must have a legitimate medical basis."). Dr. Wolston's own subjective inferences, which are largely based on Plaintiff's statements, represent the only evidence that supports the doctor's opinion. Even if Plaintiff's statements are accepted at face value, the three "facts," (R. at 464), which Dr. Wolston identifies as the basis for his conclusion that Plaintiff "has been totally psychiatrically disabled from a medical point of view since before 1995," (R. at 465), provide little, if any, support for it.[10] Dr. Wolston, apparently relying upon Plaintiff's statement

[10] The three "facts," (R. at 464), which Dr. Wolston identifies as pertinent to his conclusion are: 1) that Plaintiff "looked up a psychiatrist on his own volition in the phone book in December 1990,

that he stopped treating with Dr. Hafken because of a dispute between insurers over who would pay the doctor's bills,[11] inferred that Plaintiff's "psychiatric condition was being considered possibly work-related as early as 1990, and that it was not treated, only evaluated." (R. at 464) As already noted, Plaintiff gave inconsistent reasons for why he did not continue to treat with Dr. Hafken.[12] In any case, the possibility that Plaintiff's alleged mental impairment was work-related is not relevant to the determination of whether Plaintiff was disabled. The fact that Plaintiff did not continue with treatment, however, is relevant, and it weighs against the conclusion that Plaintiff was so mentally impaired as to be disabled. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991) ("[A]side from the five therapy sessions claimant attended ..., there is no record of any other mental health therapy during his insured status. As a result, there is no way of telling whether psychiatric treatment could have improved these 'marked' limitations.").

The second fact cited by Dr. Wolston, that Plaintiff's friend had been urging him to seek help as early as 1993, is

---

six months after his back injury," (R. at 464); 2) that the friend who eventually convinced Plaintiff to seek help again in 1999 began urging him to do so as early as 1993, (id.); and 3) that Plaintiff's own account of his hesitation in seeking help during the period 1990-1995 "centers around persistent feelings of shame and guilt ...," (R. at 465).

[11] Plaintiff also appears to have given Dr. Wolston the impression that he treated with Dr. Hafken for a period of time and "then dropped out of treatment until coverage was clarified ...." (R. at 464) As previously noted, this conflicts with Plaintiff's testimony at both the first and second hearings that he saw Dr. Hafken only once, (R. at 37, 687), and with the explanation which he gave at the first hearing for not returning to see Dr. Hafken, (R. at 37)("I just continued into my routine, my way of life. I was self medicating myself with alcohol."); see also n.9.

[12] See n.9.

certainly insufficient by itself to establish the existence of any impairment, much less prove disability. Plaintiff's friend is not an acceptable medical source. The friend's statements do not constitute medical evidence and cannot be substituted for a lack of credible evidence of an abnormality established by medically acceptable clinical and laboratory diagnostic techniques, as required by 20 C.F.R. § 404.1508.

The third fact cited by Dr. Wolston, Plaintiff's explanation that he did not seek treatment because of feelings of shame and guilt, relates at most only indirectly to the issue of whether Plaintiff had any definite mental impairment, much less whether any such impairment was disabling. Although Dr. Wolston quotes Plaintiff's self-description of his feelings during the period 1990 to 1995, such evidence is never sufficient by itself to establish the existence of an impairment, 20 C.F.R. §§ 404.1508 (2007),[13] 404.1528(a) (2007),[14] much less disability, 20 C.F.R. §

---

[13] 20 C.F.R. § 404.1508 provides in relevant part:

> Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms (see § 404.1527). (See § 404.1528 for further information about what we mean by symptoms, signs, and laboratory findings.)

20 C.F.R. § 404.1508 (2007).

[14] 20 C.F.R. § 404.1528(a) states:

> (a) Symptoms are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment.

20 C.F.R. § 404.1528(a) (2007).

404.1529(a) (2007);[15] see also Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986). In short, even if SSR 83-20 were applicable in this action, the ALJ's rejection of Dr. Wolston's opinion does not violate the regulation.

Plaintiff argues that, in addition to the opinion of Dr. Wolston, there is other evidence in the record which shows Plaintiff had a severe mental impairment "at least back to December 1995 ...." Plaintiff's Mem. at 25. Specifically, Plaintiff points to the testimony of the ME, Dr. Ruggiano, the testimony of Ms. Principe, and a letter from Plaintiff's mother. See id. at 25-26. While it is true Dr. Ruggiano testified that it is common for people who suffer work-related back injuries to experience depression as their cases move through the "system,"[16] (R. at 691-92), he did not state that he agreed with Dr. Wolston's opinion that Plaintiff suffered from a disabling mental impairment prior to his date last insured, (R. at 700-02). When Plaintiff's counsel asked him whether Plaintiff would have been able to concentrate on a job and keep up with normal work pace, Dr. Ruggiano responded in part by noting that Plaintiff had gone through vocational rehabilitation and had actually applied for

---

[15] 20 C.F.R. § 404.1529 provides in relevant part:

> [S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. § 404.1529(a) (2007).

[16] Dr. Ruggiano stated that "[T]he system consists of lawyers, doctors, and insurance companies." (R. at 692)

work which indicated that someone believed that Plaintiff was capable of employment. (R. at 701) When pressed further as to whether a person with the "syndrome," (R. at 702), which he had described, would be able to maintain normal pace or be able to deal with customers, Dr. Ruggiano responded:

> The answer, from my experience, these people who fit in this syndrome we're talking about usually spend all their time proving they can't work and that's all -- the predominant clinical feature is defensiveness and their reactivity when you suggest that they can work and they set about to prove that they can't.

(R. at 702) Viewing Dr. Ruggiano's testimony as a whole, the record supports the ALJ's statement that "[a]lthough this syndrome is consistent with the claimant's testimony, Dr. Ruggiano concluded that the disability determination in the instant case must consider other factors[,] including the claimant's vocational rehabilitation potential, ability to be retrained[,] and active job searching during the period prior to the lapse of his insured status." (R. at 532)

As for the testimony of Ms. Principe, (R. at 54-63), and the letter written by Plaintiff's mother in 2001, (R. at 183-84), neither piece of evidence constitutes contemporaneously recorded lay evidence created during the period in question. While this fact does not render their evidence inadmissible, it is clearly relevant to the weight which is to be given to it.

The testimony of Ms. Principe essentially corroborated Plaintiff's testimony and was in that sense redundant. She related that she had known Plaintiff since October of 1993, (R. at 56), and that he became very depressed in November and December of 1994 following his unsuccessful job search, (R. at 58). Defendant had already testified to this, (R. at 40-41), and her testimony did not open any new lines of evidence which needed to be addressed.

An ALJ is not required to discuss every piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Clifton v. Chater, 79 F.3d 1007, 1009-10)(10th Cir. 1996); see also Rasmussen-Scholter v. Barnhart, No. Civ.A. 03-11889-DPW, 2004 WL 1932776, at *10 (D. Mass. Aug. 16, 2004)(citing Rodriguez v. Sec'y of Health & Human Servs., 915 F.2d 1557, 1990 WL 152336, at *1 (1st Cir. Sept. 11, 1990)(per curiam)(unpublished table decision)); Lord v. Apfel, 114 F.Supp.2d 3, 13 (D.N.H. 2000) ("[T]he First Circuit has held that an ALJ's written decision need not directly address every piece of evidence in the administrative record.")(citing Shaw v. Sec'y of Health & Human Servs., 25 F.3d 1037, 1994 WL 251000, at *5 (1st Cir. June 9, 1994)(per curiam)(unpublished table decision)). While it would have been preferable for the ALJ to have specifically addressed Ms. Principe's testimony in his decision, the Court declines to find that the failure to do so here constitutes error. See Carlson v. Shalala, 999 F.3d 180, 181 (7th Cir. 1993)(holding that ALJ did not err by failing to explicitly discuss testimony of claimant's wife where that testimony essentially corroborated claimant's); see also Herron v. Shalala, 19 F.3d 329, 337 (7th Cir. 1994)(rejecting contention that ALJ's decision should be reversed because he did not articulate any reason for rejecting testimony of wife where "the ALJ addressed the issues raised by [claimant's] wife in relation to his testimony").

The ALJ addressed the letter from Plaintiff's mother in his decision. (R. at 529 n.6) He observed that it "seemed to focus mainly on [Plaintiff's] 'pain' beginning with his back injury while noting that as the 'years went on' [Plaintiff] became 'more and more' isolated from society [quoting (R. at 183-184)]." (R. at 229) The Court is unable to say that this description is inaccurate or unfair.

In sum, given that the testimony of the ME provided only

marginal support for Dr. Wolston's retrospective opinion, that the retrospective testimony of Ms. Principe was largely redundant and unsupported by any contemporaneously created records (medical or otherwise), and that the letter from Plaintiff's mother was similarly retrospective and unsupported by contemporaneous records, the Court is unpersuaded that this evidence should have caused the ALJ to find that Plaintiff had a severe mental impairment which existed back to 1995. The Court specifically finds that the first reason given by the ALJ for affording little weight to Dr. Wolston's opinion (i.e., length of time and lack of records) is supported by substantial evidence.

**2. Alcohol Abuse**

The second reason given by the ALJ for rejecting Dr. Wolston's opinion was that the doctor "did not delineate the significance of the claimant's self-admitted alcohol abuse in finding him 'disabled' prior to December 1995." (R. at 533) Plaintiff argues that the ALJ had an obligation to recontact Dr. Wolston to clarify his opinion if the ALJ thought this was a crucial matter. See Plaintiff's Mem. at 27. In support of this argument, Plaintiff quotes the following statement from SSR 96-5p:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator **must** make "every reasonable" effort to seek to recontact the source for clarification of the reasons for the opinion.

Plaintiff's Mem. at 27-28 (quoting SSR 96-5p, 1996 WL 374183, at *6 (S.S.A.)).

It is clear from the excerpt quoted above that the requirement to recontact the treating source applies when the ALJ cannot ascertain the basis for the opinion from the case record.

Here, the basis for Dr. Wolston's opinion was absolutely clear because it is explicitly stated in his letter to Plaintiff's attorney. (R. at 464-65) Thus, the ALJ was not required to recontact Dr. Wolston. See Alejandro v. Barnhart, 291 F.Supp.2d 497, 512 (S.D. Tex. 2003)("SSR 96-5p does not say that ALJs must recontact a treating physician whenever the record as a whole (or a treating physician's particular contribution to the record) fails to support his opinions."); see also Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2nd Cir. 1999)("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."). Plaintiff's attack on the second reason given by the ALJ for rejecting Dr. Wolston's opinion is, therefore, rejected.[17]

---

[17] Although there is extensive evidence in the record of Plaintiff's abuse of alcohol during the period 1990-1995, Dr. Wolston does not appear to have considered the significance of this fact in opining that Plaintiff was "disabled" prior to December 1995. Pursuant to Section 105 of Public Law 104-121, codified at 42 U.S.C. § 423(d)(2)(C) and 42 U.S.C. § 1382c(a)(3)(J), "[a]n individual shall not be considered to be disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); see also 42 U.S.C. § 1382c(a)(3)(J). The key issue in determining whether alcohol abuse is a contributing factor material to a finding of disability is whether a claimant would still be found disabled if he stopped using alcohol. 20 C.F.R. § 404.1535(b)(1). Plaintiff bears the burden of proving that alcohol abuse is not a contributing factor. Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999); accord Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000).

The Commissioner argues, and the Court is compelled to agree, that even if Plaintiff was disabled during the relevant period, he still cannot show that his alcohol abuse was not a contributing factor material to disability. See Defendant's Memorandum of Law in Support of Motion for an Order Affirming the Decision of the Commissioner ("Defendant's Mem.") at 17. There is no evidence in the record from any medical source concerning limitations in Plaintiff's mental functioning independent of alcohol abuse during the relevant time period.

### 3. **Failure to Address Functional Areas**

The ALJ noted that Dr. Wolston failed to specifically address Plaintiff's degree of limitation in the various functional areas prior to the lapse of his insured status "aside from the conclusionary statement that he was 'totally psychiatrically disabled.'" (R. at 533) In a footnote which accompanied this statement, the ALJ accurately referenced the fact that the issue of whether a claimant is disabled is one which is reserved to the Commissioner.[18] (R. at 533 n.12) Both of these points are valid. Dr. Wolston's statement that Plaintiff "has been totally psychiatrically disabled from a medical point of view since before 1995," (R. at 465), is a quintessential example of a medical opinion which invades the

[18] 20 C.F.R. Section 404.1527(e) provides that:

> Opinions on some issues, such as the examples that follow, are not medical opinions ... but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.
>
> (1) Opinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

20 C.F.R. § 404.1527(e) (2007); see also Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991)("The ALJ was not required to accept the conclusions of claimant's treating physicians on the ultimate issue of disability."); SSR 96-5p, 1996 WL 374183, at *3 (S.S.A.)("[T]he adjudicator is precluded from giving any special significance to the source; e.g., giving a treating source's opinion controlling weight, when weighing these opinions on issues reserved to the Commissioner."). However, such opinions are not to be disregarded. See SSR 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored."). They must be evaluated using the applicable factors in 20 C.F.R. § 404.1527(d). See id.

province of the Commissioner, see Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)("[T]he determination of the ultimate question of disability is for [the Commissioner], not for the doctors or for the courts.")(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971)); 20 C.F.R. § 404.1527(e) (2007). Accordingly, the ALJ was not required to accept it. See Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991)("The ALJ was not required to accept the conclusions of claimant's treating physicians on the ultimate issue of disability."); SSR 96-5p, 1996 WL 374183, at *5 (S.S.A.)("[E]ven when offered by a treating source, [opinions on issues reserved to the Commissioner] can never be entitled to controlling weight or given special significance.").

**4. Speculation**

The ALJ observed that Dr. Wolston by using terms such as "reasonable" and "in all likelihood," (R. at 533), seemed to be speculating about Plaintiff's condition prior to December 1995 and that this is "clearly **not** considered 'substantial evidence,'" (R. at 533). Plaintiff argues that the ALJ's reasoning was "faulty," Plaintiff's Mem. at 28, and that Dr. Wolston "was offering a 'reasonable inference' as to the presence and severity of the plaintiff's mental impairment as it existed several years before he treated the plaintiff," id. Plaintiff again cites SSR 83-20 as providing support for his argument. However, the Court has already determined that SSR 83-20 is inapplicable to the instant matter. See Discussion section I.D.1. supra at 14-15. Moreover, the Court declines to fault the ALJ for citing language in Dr. Wolston's opinion which is open to the interpretation the ALJ suggests. Cf. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("It is the responsibility of the [Commissioner] to determine issues of

credibility and to draw inferences from the record evidence.")(citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). At the very least, Dr. Wolston's phraseology suggests a lesser degree of certainty than that usually expressed by most medical practitioners. The ALJ additionally explained in a footnote why he took issue with Dr. Wolston's statement that it was "reasonable" to assume that Plaintiff had been disabled since before 1995, (R. at 533 n.13), accurately pointing out that "there is virtually no psychological or psychiatric treatment prior to the claimant's lapse of insured status ...," (id.), and that the doctor's retrospective opinion was being rendered almost four years after the fact in a letter directed to Plaintiff's attorney, (id.).[19] While the ALJ's assertion that Dr. Wolston's statement "is, frankly, 'not worth the paper it is printed on,'" (id.), is hyperbole, the ALJ explained the reasons for affording the doctor's opinion little weight. Those reasons are supported by the record, and the Court need not agree with every statement in an ALJ's decision to find that it is supported by substantial evidence and free of legal error.

**5. Failure to Seek Treatment**

In finding Plaintiff less than fully credible, the ALJ stated that if Plaintiff had "actually experienced the intense

[19] Another factor which supports the ALJ's determination to give less weight to Dr. Wolston's retrospective opinion is that it is not based on medical signs and laboratory findings but Plaintiff's subjective statements. "It is ... clear that a diagnosis of a claimant's condition may properly be made even several years after the actual onset of the impairment .... [if it] is predicated upon a medically acceptable clinical diagnostic technique and ... when considered in light of the entire record, it establishes the existence of a physical impairment prior to [expiration of insured status]." Stark v. Weinberger, 497 F.2d 1092, 1097 (7th Cir. 1974)(internal citations and quotation marks omitted); see also Dousewicz v. Harris, 646 F.2d 771, 774 (2nd Cir 1981)(same).

symptoms he described at the hearing, ... [Plaintiff] would have at least sought out some form of psychological and/or psychiatric treatment prior to December 1995." (R. at 534) Plaintiff asserts that he "explained very clearly why it took a while for him to obtain ongoing psychiatric treatment." Plaintiff's Mem. at 29. According to Plaintiff, the reason why he did not seek psychiatric treatment before 1995, despite encouragement from his mother, friends, and girlfriend to do so, was that "he thought it was 'taboo.'" (Id.)(quoting (R. at 685)) However, as previously discussed, see Discussion section I.D.1. supra at 14 n.9, Plaintiff gave inconsistent reasons for failing to obtain treatment prior to 1999, including that there was a dispute over insurance coverage, that he just continued with his routine, that he felt too ashamed, and that he felt he did not need treatment. The ALJ is responsible for resolving conflicts in the evidence. See Suarez v. Sec'y of Health & Human Servs., 740 F.3d 1 (1st Cir. 1984)(stating that ALJ is "empowered to make credibility determinations and to resolve conflicting evidence"); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the Commissioner], not for the doctors or for the courts."). Given Plaintiff's conflicting explanations for not seeking treatment, the ALJ could reasonably conclude that Plaintiff's failure to seek treatment weighed against a finding that he had any medically determinable mental impairment.

**6. Seeking Employment**

The ALJ noted that Plaintiff's "own treating and examining sources have consistently reported that he has remained capable

of light duty work,"[20] (R. at 534), and that "the claimant was actually seeking out employment though he was not hired," (id.). Plaintiff responds that the ALJ failed to acknowledge that Plaintiff's failure to secure employment resulted in a downward spiral of his mental health. See Plaintiff's Mem. at 30 (citing (R. at 41-42, 58-59)). Plaintiff cites his testimony that he pursued over 200 job leads and obtained only one follow-up by an employer despite having gone through vocational rehabilitation. See id. He argues that this "monumental failure to re-enter the workforce," id., caused his feelings of poor self-esteem and unworthiness, see id.

The Court takes the ALJ's point to be that while Plaintiff claimed to be disabled since May 9, 1990, (R. at 673, 683), and his attorney argued at the hearing before ALJ Atkins that "Mr. Storti was depressed all the way back to 1990 and significantly so," (R. at 677), Plaintiff was actively seeking work in 1994. Such activity is at odds with Plaintiff's claim that he has been unable to work since May of 1990. While it is true that there is no evidence that Plaintiff sought employment after October 1994, the ALJ was entitled to point out the inconsistency between Plaintiff's claim of being disabled since May of 1990 and his seeking employment in 1994. The ALJ articulated valid reasons for finding Plaintiff less than credible, and he was not required to accept Plaintiff's claim of severe depression after failing to obtain employment in 1994. See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987)("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when

[20] From the context, it is clear that in making this statement the ALJ is referring to the period prior to the expiration of Plaintiff's insured status.

supported by specific findings.”)(citing DaRosa v. Sec’y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986)); see also Yongo v. INS, 355 F.3d 27, 32 (1st Cir. 2004)(“[T]he ALJ, like any fact-finder who hears the witnesses, gets a lot of deference on credibility judgments.”).

**II. Summary**

The ALJ’s reasons for affording little weight to the retrospective opinion of Plaintiff’s treating psychiatrist are supported by substantial evidence and free of legal error. The ALJ had ample basis on which to find Plaintiff less than fully credible. Lastly, even if Plaintiff were able to show that he was under mental disability prior to the expiration of his insured status, he is unable to show that his alcohol abuse was not a contributing factor to his disability.

**Conclusion**

For the reasons stated above, the Court finds that the Commissioner’s decision that Plaintiff is not disabled is supported by substantial evidence in the record and free of legal error. Accordingly, I order that Defendant’s Motion to Affirm be granted and that Plaintiff’s Motion for Reversal and Remand be denied.

So ordered.

ENTER:

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
March 3, 2008